Martin Slaughter by his Will Aug. 23. 1732. devises four negroes to his Son George (the Pit.) and the lawful Issue of his body for ever and four negroes to his daughter Judith and the lawful Issue of her body for ever but if either nay son or daughter shall die without such Issue the survivor to have an enjoy the said Slaves and their Increase Judith was possessed of the Slaves devised to her married the Deft, and died without Issue The Question is whether the Limitation over to the Survivor who is George (the Pit.) be good.
I shall agree that Slaves here are to be considered meerly as Chattels It was a great while before Limitations over of Chattels were allowed for the Rule of Law was that the Gift of a personal Chattel for an hour is a Gift forever However the Use of a Chattel might be limited to one and the Rem’r to another and this was always allowed But about the Beginning of King James 1. the Law began to be altered and in Devises of Terms for Years which are Chattels real the Judges would allow of a Rem’r over after a Devise for Life This was first settled in Matthew Manning’s Case 8 Rep. 94. b. and afterwards in Lampet’s Case 10 Rep. 47. b. and was introduced under the name of Executory Devises It was longer before the Judges would admit of such a Rem’r of Chattels personal but after the Restoration when personal Chattels began to grow large such limitations of Chattels meerly personal began to be allowed upon a Distinction that at one [sic] preserved the old Rule of Law sacred and inviolate and at the same Time satisfied the Intention of the Testator For in Case of a Devise for Life with Rem’r over to another the Judges construed the first Devise to be only of the Use and then the Rem’r over stood well with the Rule of Law I first mentioned So that now it is no longer a Question but that such a Limitation may be both of Chattels Real and Personal provided the Contingency upon which these Limitations are to take place be appointed to arise within a reasonable number of Years or within the Compás of a Life or Lives in being. And this is as far as the Law will admit of such Limitations over of Chattels.
I shall proceed now to consider whether the Devise before us will come within this Rule. The Devise is in short to two and the Issue of their bodies and if either die without Issue *B252 Rem’r to the Surviv’r .It will be sayed -I presume that here are words to make an Estate-tail [359] that a chattle can’t be intailed and so the absolute Property vested in the first devisee and the Rem’r over is repugnant and void I shall agree that if the subject of this Devise was a real Estate these Words would carry an Estate-tail for the Word (Issue) in a Will is of the same Import as Heirs of the Body but I conceive there is a great Difference Where the Subject of the Devise is a real Estate and where it is a personal Estate for in the last case the Word Issue has not the same Construction as in the first A Devise of Land to one for Life and if he die without Issue Rem’r over gives an 'Estate-tail by Implication and Construction of the Testator’s Intention .that the Rem’r over should not take Place till the first Devisee was dead without Issue But in such a Devise of a Chattle I conceive the 1 Devisee has only the Use and the Estate shall not be enlarged by implication it being contrary to the Nature of the Thing given to be intailed And therefore the same Construction is not made as in the other Case but dying without Issue is taken to be a Contingency which being restrained to the time of the Devisee’s Death falls within the Common Rule of a Limitation upon a Contingency to happen within the Compás of a Life Issue ex vi termini does not import Heirs of the Body
The Limitation in this Caséis “ If either die without Issue then to the Survivor ” Here if the dying without Issue is taken generally whenever there shall be a failure' of Issue the Limitation over cannot be good because that will tend to a Perpetuity which the Law abhors and is the true Reason why Limitations over of personal Things are restrained. But Lconceive the Testator meant no more than this that if there was no Issue living at the Death of the Somor Daughter first dying that then the Slaves should go to the Survivor. The Words of a Will are to be taken as they are understood in Common Speech. Now among the vulgar a man is sayed to be dead without Issue if he leaves no Children at his Death Issue and Children are words sinonimous in Common parlance.
Smith and Clever 2 Vern. 38. 59. The Interest of a sum of money was devised'to one for Life and if he died without Issue the Principal to go over and the Rem’r held good for to serve the Intention of the Party and support the Rem’r the dying without Issue was applied to the Time of the Death of the 1 *B253 Devisee. Pinbury and Elkin 2 Vern. 758. 766. Prec. Cha. 484. Devise to his Wife provided if she died without Issue then 80,£. to remain to his Brother after her Decease and the Rem’r held good for the dying without Issue must be understood leaving-issue at her Death and it cannot be supposed the Testator intended his Brother should have it if Issue failed 100 years after [360] Target and Grant Ch. Ca. Abr. 193. and cited Fitzg. 317. A Term was devised to One during his Infancy and if he attained his Age of 21 years then to him for Life and to such of his children as he should leave it to and if he should die without Issue then limits it over which was held good for the dying without Issue was restrained to the Time of the Death of the 1 Devisee Forth and Chapman cited Fitzg. 317. and Rep. 1 Will. 663. Devise of a real and personal Estate to A. for so much of it and for the rest to B. and if either depart this Life leaving no Issue then to such a one Which Limitation as to the personal Estate was held good leaving no Issue importing a dying without Issue at his Death See Hughs and Sayer Maddox and Stains cited Fitzg. 318. 6
All which Cases prove that dying without Issue have a different Import and Construction as the Subject is a real or personal Estate for in all the cases above cited they would have been taken as an Increase of Interest and made an Estate-tail if the Devise had been of a real Estate but being of a personal Estate they are construed to be Words of Contingency only Upon the Reason and Authority of these Cases I presume the Determination of this Court was grounded in the Case of Lightfoot and Lightfoot heard in this Court April 1734. which was thus The Testator devised as follows I give all the Rem’r of my Estate real and personal to my son Francis and his Heirs male of his Body and if he die without such Issue Male or if there be any Failure hereafter in the Male Line then I give the same to my Brother and adjudged that the Rem’r over of the personal Estate was good tho’ limited upon a double contingency and tho’ the Words undoubtedly gave an Estate tail to the Son in the Lands And this I think a much stronger Case than ours.
But there is still something further in this Devise that plainly shews the Testator did not intend the Rem’r over sho’d take Place upon a dying without Issue generally but the Words do obviously restrain the Contingency to the Compás of a Life and that by limiting the Rem’r to the Survivor “ In Case *B254 either die without Issue then to the survivor ” Which words I conceive do clearly demonstrate that the 'dying without Issue must be in the Lifetime of the other or else the survivor could not take Vide. Prec. Cha 528. Nickols a Skinner This I apprehend puts it beyond all dispute that the Testator did not intend the Rem’r should take Place upon a dying without Issue generally Now whether it be construed leaving Issue at the Death of the Devisee or dying without Issue in the Life time of the Survivor in either case the contingency is to happen within the compás of a Life and so within the general Rule of such Limitations If the last construction prevails then it is like the D of Norfolk’s Case 3 Ch. Ca. 1. only stronger that.
[For the rest of this Case see ante page 237. two leaves are wanting at that point hence the first part of the case written in the back of the book commencing at page 358.]
Por the first part of this case see Post p. 358.
[237] being upon a Deed and this upon a Will That Case was in short thus A Term for Years was created by one Deed & by another the Trust thereof declared to the second Son & the Heirs Males of his Body Provided if the eldest Son died without Issue living the second. So that the Earldom of A. descended to the 2d Son Then the Term to remain to the 3. Son & the Heirs Males of his Body with Rem’rs over And this Rem’r to the third Son upon the Contingency of the eldest dying without Issue in the Life' time of the 2d was held good So —
Lamb & Archer 1 Sal. 225. Devise of a Term to A. & the Heirs of his Body And if he die without Issue living B. Then to B. This Limitation held good being upon a Contingency to happen within the Compass of a Life. • Vide 2 Vern. 86. 151. Ch. Ca. Abr. 193. 10. So that here whether dying without Issue be construed leaving Issue at his Death Or whether it be construed Dying without Issue in the Lifetime of the Surviv’r The Rem’r over is good either Way And both the Contingencies have happened And one of these Constructions ought to be made tho’ the Words of the Will were not so plain as I conceive they are And that to support the Rem’r over which otherwise must be void It ought never to be supposed that a Man intends a vain void Devise if any other Construction can be made And the Rule of Law is to construe a Will so as to make all the Parts of it stand if it may be which in this Case can only be by the *B255 Construction I contend for And this will offer no Violence to the Words but rather preserve the plain Intention of the Testator by supporting the whole Will For I must submit whether it be not more reasonable to suppose that the Testator intended the Rem’r should take Place in Case the Devisee left no Issue at his Death living the Survivor than upon so remote a Contingency as a Failure of Issue 100 or 500 Years after I conceive the Word Survivor plainly restrains it to the first
Acril for the Deft.
Tf we were in a Case of Lands the first Part of the Devise would create an Estate tail without all Question & would need no Assistance from the subsequent Clause to make it so by Implication. And it is a Rule that Words in a Will creating an Estate tail in Lands carry the absolute Property in personal Things In all the Cases cited con. the first Devise was only for Life which to'support the Testors Intention was construed to pass only the Use And that the express Gift should not be construed to be enlarged by any subsequent Words As Dying without Issue or the like as it would in Case of a Devise of Lands. But where the absolute Property is once given as in this Case. The same Thing cannot be given over. He cited 1 Ch. Ca. 129. 1 Vern. 35. 326. 2 Vern. 255, 347. 1 Sal. 156. FitzG. 314. which was much relied on.
*B255 There is a Case in PitzG. 314. The Goldsmiths Company ag’t Hall that I suppose will be much relied on but when it comes to be considered will appear to differ much from this The Devise was thus “ I give & bequeath all my real & personal Estate unto “ my Son Pr. H. & to the Heirs of his Body to his & their Use “ And if my said Son shall die leaving no Heirs of his Body “ living Then I give & bequeath so much of my said real & “ personal Estate as my said Son shall be possessed of at his “ Death to the Goldsmiths Company” In this Case it was the Opinion of my Lord Chancellor that the absolute Property of the personal Estate passed to the Son And that the Limitation over was void But the principal Reason was this Because the Company was [238] to have no more than the Son should have left unspent And so he had a Power to dispose of the whole & consequently the absolute Ownership passed There is another Reason indeed given which is that Words which give an Estate tail in the Land must transfer the entire Property of the personal Estate But that can weigh nothing in the present Case where the Devise is merely of Chatties And I have before observed the Difference there is where the Subject of the Devise is of a real Estate & where it is of an Estate personal In the Case of Lamb & Archer supra the Devise was to A. & the Heirs of his Body which would be clearly an Estate tail in the Case of Lands And yet there the Limitation over was adjudged good So in the D. of Norfolk’s Case the Term was limited to the 2d Son & the Heirs male of his Body & yet the Rem’r over held good Which Cases prove the Difference where the Subject is a real Estate & where a personal Estate Here we are in the Case of a personal Estate It is repugnant to the Nature of it to be intailed And therefore ought not to be supposed that the Testor intended so if another Construction can be made.
*B256 April 1737. Judgment for the Deft, by the whole Court.
Except Lee & the Governor And I think very rightly — But Vid. 1 Will. 534. Hughs a Sayer. Devise of personal Estate to A. & B. And upon either of their dying with’t Children then to the Surv’r Held a good Lim over.
See also Pinbury & Elkin 2 Vern. 758. Prec. Cha. 484. And a Dili, taken in this last betw. a Devise of a Chattle to one & the Heirs of his Body with Rem’r over And a Devise to one generally & if he die with’t Issue Rem’r over.
How far personal Estates may be limitted over Vide Barnerdiston Chan. Rep’ts 54. &C.[1]
[239] Brooking vs Dudley. Dixon a Brooking & Collier a Brooking in 3 Actions of Detinue for Slaves Upon a Special Verdict the Case is Judith Whale being possessed of sev’l Slaves intermarried with Ralph Emery & died in 1724. The Pit. Brooking being her Heir at Law after her Death bro’t an Action of Detinue in this Court ag’t Emery for the Slaves And being an Infant one W’m Brooking is named his next Friend or prochein Amie in the said Suit In this Action the Pit. had Judgment to recover the Slaves or 120£. the Value in April 1727. And upon the Trial the Court gave their Opinion which is entered upon Record that the Slaves did not vest in Emery by the Marriage At the End of this Judgment there is an odd sort of Rule enter’d to this Effect That in Case the Value found by the Jury exceeded the Appraisem’t of these Slaves (in K. & Q. Court) that the Pit. would release so much as the same exceeded And if the Appraisem’t was more the Pit. was to have Exon for *B257 so much more Soon after this Judgm’t in May 1727. Emery sold one of the Slaves to the Deft. Dudley & 2 others to Dixon & Collier the Pits, in the other Actions (w’ch are the Slaves in Dispute) for as much Money as the Slaves were appraised to & paid the Money to Wm. Brooking the Prochein Amie but they knew of the Judgment when they purchased. The Pit. Brooking was then about 12 Years old & had no Guardian till after he was 14 when he chose Wm. Lawson
The Question in this Case is whether the Sale by Emery after the Judgment And the paying of the Money to the Prochein Amie shall conclude the Pit. who was then under Age or be any Bar to his Right But first it may be necessary to shew the Origin of the Pits. Title to these Slaves And then to consider how far the Act of a Prochein Amie shall bind an Infant Upon which the Solution of the Question in this Case does properly depend
As to the Pits. Title. If the Question was now whether the Slaves vested in Emery by the Marr 1 presume it would be determined that they did upon the explanatory Act of 1727. which is express in the Point But there having been a Judgment in the Case that Act has very judiciously provided that the Property shall be established according to the Judgment & is not now to be questioned It is clear then that the Pit. has a good Title unless by some Act since that Judgment his Title is defeated
To proceed then in the Enquiry how far the Act of a Prochein Amie shall bind an Tnfant It may be necessary to see what the Office of a Prochein Amy is The Law is very careful & tender to preserve the Rights of Infants who are presumed to want Discretion for the Conduct & Managem’t of their Affairs. And therefore all Acts or Contracts of theirs except for Necessaries are void in Law Except [240] there be a Benefit or Appearance of such resulting to the Infant Cro. Car. 502. Loyd a Gregory 3 Mod. 301. 307. Thompson a Leach 2 Danv. 767. &c. Upon the like Presumption & Reason it is that the Law will not allow an Infant to sue or defend an Action in proper Person or to make an Attorney for that Purpose but he must always sue & defend by Prochein Amie or Guardian to be assign’d by the Court And he may prosecute a Suit by either but must always defend by Guardian It is a great Error to confound the Office of a Guardian & Prochein Amie together as some Authors do for there is certainly a great Difference between the Power & Authority *B258 of the one & of the other. The Guardian is an Office at Common Law And at the Common Law an Infant could only appear' by Guardian The Prochein Amie was introduced by the Statutes Westm. 1. 48. & Westm. 2. 15. upon certain Cases of Necessity as 1. Where an Infant is to sue his Guardian for Wast 2. Wnere he is eloined so that he cannot be present in Court as he always must to pray a Guardian to be assigned to him And it was only in these Cases that suing by Prochein Amy was used till a long Time after making these Statutes But at length it being found more convenient as the Infant was not obliged to be in Court when the Prochein Ami was admitted It became a gen’l Practise & is so at this Day for an Infant now seldom or ever sues by Guardian 2 Inst. 261. 390
A Guardian assigned by the Court to defend for an Infant has a very great Power His Acts shall bind the Infant & he may even acknowledge Satisfaction of a Judgment Lili. Abr. 656. Mo. 852. But then the Law ever careful of the Infants Interest has given him an Action ag’t his Guardian to recov’r Damages for any Prejudice he may sustain by the Act or Default of the Guardian who being appointed by the Court Care is always taken that he be a Person responsible that the Infant may not be disappointed or defeated of his Recompence
But the Case is quite otherwise with the Prochein Ami who is a meer Nominee appointed in Compliance with the Forms of Law but without any Power at all No Act of his shall bind the Infant nor can he do any Thing to his Hurt or Prejudice that will be binding And the Reason is because the Infant can have no Remedy ag’t him. He can have no Action at the Common Law because the Prochein Ami was not an Office at the Common Law but was introduced by Statute as has been observed Neither is an Action given by any Statute Nor is there any Instance of such an Action in any of our Books. It would then be extremely hard & not at all consonant with the Spirit of our Laws so tender of Infants Rights as has been observed if the Act of a prochein Ami should prejudice an Infant when he must be without [241] Remedy for the Damage he suffers I-will beg leave to read a Case or two that I hope will prove & illustrate what has been offered on this Head. Palm. 295. Simpson & al’ ag’t Jackson Cro. Ja. 640. S. C. Sti. 369. From these Cases & what has been sayed as well as from the Reason of the Thing I hope it is sufficiently evident that a Prochein Ami has no Power *B259 at all to intermeddle in a Judgment obtained by an Infant And that any Act of his prejudicial to the Infant is void I might add the Inconvenience that must follow from a contrary Determination For then any Person under Pretence of Friendship to an Infant may thrust himself into this Office of a Prochein' Ami he may receive his Money release his Right And if he prove insolvent the Infant be without any Kind of Remedy By which Means half the Infants in the Country may be ruined
If then no Act of Brooking the Prochein Ami can hurt the Pit If the Paiment of the Money to him by Emery be no Paiment at all in Discharge of the Judgment as I think must follow from the Doctrine I have advanced It will also be pretty clear I hope that the pretended Sale of the Slaves by Emery upon the Circumstances of this Case cannot hurt the Pits. Right or be any Bar to his recovering them I call this Sale of Emerys pretended because I believe it will evidently appear that the Sale in fact was Brookings & Emerys acting in it was only an Artifice to blind the World. It was certainly a fraudulent Contrivance between Brooking Emery & the Purchasors to cheat the Pit. out of his Slaves — Brooking the Prochein Ami was a needy Man & all he wanted was to get Mony into his Hands The Purchasors who no doubt had a good Bargain in the Slaves were conscious that Brooking himself could not sell them if they were actually delivered to him And so they agree upon this fine Artifice that Emery sho’d pretend to sell them tho’ the Mony was paid to Brooking The Facts in the Verdict prove all this to a Demonstration The Slaves were sold soon after the Judgment Emery indeed takes upon him to sell them but Brooking receives the Mony of the Purchasors who knew of the Judgment at the Time The Purchasors then are inexcusable being privy to the Fraud & Contrivance And surely no Fav’r is' due to Men that will thus combine to rob Infants of their Rights This Sale then I conceive must be looked upon a [sic\ Brookings Emery was only his Agent the better to colour the Fraud And then sure it will not be pretended that this Sale shall bar the Pit. from recovering It was never yet allowed that a lawful Guardian could sell the Slaves of his Ward Much less one who has really no Power or Authority over the Infant or his Estate It is really a Case of general Concern & may affect all the Infants in the Country
I can’t tell whether any Stress will be laid on the Rule that is enter’d at the End of the Judgm’t which I opened perhaps it *B260 may be sayed [242] it is the Act of the Court & shall bind the Infant & then it plainly imports that the Pit. was to have Mony in Lieu of the Slaves But Sir I take this Rule to be the strongest Evidence in the World of the Fraud & Contrivance intended to be carried on from the beginning I mean by the Prochein Ami in order to get Mony into his Hands And must certainly be regarded as his Act & not the Act of the Court for I presume this Court never intended to give him a Power to sell the Slaves or to take Mony in Lieu of them Besides the Rule is void in itself for it is not made by Consent Only the Pit. agreed & he agrees not only for himself but the Deft, too (Read the Rule) No Man will say the Deft, was bound by this Rule And if it was not reciprocally obligatory it must be void Sure it must raise the Indignation of this Court to see their Rules made a State & Property of to colour & carry on a Fraud in Prejudice of Infants whose Care is their peculiar Province
But admitting this could be regarded as the Act of the Infant Still it would be void tho’ upon Record For as I have already observed no Act of an Infant tho’ of Record if any Ways prejudicial to him shall bind him It is known Law that even a Fine levied by him may be avoided during his Infancy 1 Inst. 131. a. 380. b. And this Action was brought before his full Age Besides the obvious Meaning of this Rule is no more than this that if the Pit. could not have the Slaves again he should have as much Money as the Slaves were appraised to It was never intended to exclude the Pit. from having his Slaves if he could get them And then the Rule is nothing to the Purpose unless the Mony had been actually paid to him which it was not
The Hardship upon the Defts. will be no more than this that they must sue Brooking for their Mony again And whether it is not more reasonable that they should be put to that Trouble than that the Pit. should lose his Slaves must be submitted Had they been fair Purchasors without Notice of the Judgment something might be sayed in their Excuse but they knew at the Time they were buying the Slaves of an Infant they were privy & consenting to the Juggle & Contrivance of the Pochein Ami & so were Parties to the Fraud I hope no Countenance will be given to Fraud in this Court Nor so ill a Precedent established that a Prochein Ami may sell the Slaves of an Infant
By the Laws of this Colony every Guardian must give Security before he can act as such and for omitting to take Securitythe *B261 Justices are answerable And so the Infants Right & Interest is sufficiently protected But a Prochein [243] Ami gives no Security. And ii he proves insolvent the Infant is ruined
For the Deft, it was sayed that by the Judgment the Defend’t had an Election to pay the Money or deliver the Slaves And that by Paiment of the Money the Property of the Slaves was divested out of the Pit. It was granted that that nothing done to the Infants Prejudice should bind him but that here was no Injury to him the Value of the Slaves was paid to a Person having sufficient Authority to receive For if the Prochein Amy could not receive the Mony There was no other Person to whom it could be paid the Infant having no Guardian. If the Sherif had levied the Mony on Exon he must have paid it to the Prochein Ami And where is the Difference That the Infant was in no worse Case than if a Guardian had acted in this Manner which it is allowed he might do The Infant might have his Action ag’t the Proch. Ami That here was really nothing of Fraud in the Case nor any Occasion for underhand Dealing For Emery might lawfully sell the Slaves after the Judg’t If Exon had been sued out & the Sherif could not get the Slaves he must have levied the Money Where then was the Fraud or Injury to the Infant. A great deal was sayed of the Power of Guardians. And it was industriously endeavoured to confound the Offices of a Guardian & Prochein Ami & make them the same It was also much insisted on that great Service was done to the Infant by bringing the Suit for if it had been delaied a little longer till the explanatory Act was made the Infant would not have recovered at all
April 1737. judgment for the Deft.
Note the Court seemed not to take the Difference between a Guardian & a Prochein Ami Nor to consider the gen’l Inconvenience of allowing such Power to a Prochein Ami And the Advantage to the Infant by having Suit brought seemed to weigh much

 This line an addendum in a different hand. W. W. S.